UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CLIFFORD BURELL,<br><br>        Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:23-cv-00787-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 12) |

Plaintiff Jeffrey Clifford Burell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1).  The matter is before the Court on the Administrative Record (Doc. 11; hereinafter, "AR") and the parties' briefs (Docs. 12, 14), which were submitted without oral argument.  Upon review of the record, the undersigned finds and rules as follows.[1]

I.    **BACKGROUND**

    **A.    Administrative Proceedings and ALJ's Decision**

On June 26, 2020, Plaintiff filed an application under Titles II and XVI of the Social Security Act, alleging disability beginning on December 1, 2015.  (AR 283-290, 291-299).

---

[1] On May 31, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned for all purposes.  (Doc. 10).

Plaintiff's claim was denied initially and again upon reconsideration. (AR 170-173, 179-183, 185-196). Plaintiff requested a hearing before an Administrative Law Judge on November 19, 2021. (AR 198-199).

Administrative Law Judge ("ALJ") Brian Lucas held a hearing on April 15, 2022, wherein Plaintiff, his attorney William Carr, and impartial vocational expert ("VE") Bernard Preston appeared. (AR 58-95). ALJ Lucas issued an unfavorable decision on May 13, 2022. (AR 33-49). The Appeals Council denied Plaintiff's request for review on April 12, 2023, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1-6). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920. (AR 34). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 36).

At step two, the ALJ found that Plaintiff had the following medically determinable impairment ("MDI") which significantly limits the ability to perform basic work activities: schizophrenia, right hand fracture, and nystagmus. The ALJ also found that, with respect to the Title XVI claim, Plaintiff had severe impairments of paranoid schizophrenia and nystagmus and the non-severe impairment of right-hand fracture. (AR 36, 39). The ALJ addressed the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2] In the second, third, and fourth areas, the ALJ found Plaintiff had a mild limitation; in the first area, the ALJ found that Plaintiff had no limitation. (AR 38-39). With respect to the Title XVI claim, the ALJ found Plaintiff had a moderate limitation in the second, third, and fourth areas: in the first area, the ALJ found that Plaintiff had a mild limitation. (AR 40-41).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination

---

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id*. To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 36, 40).

Prior to step four, the ALJ found the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations. The claimant can perform no work requiring fine visual acuity, no climbing of ladders/ropes/scaffolds, and have no frequent exposure to workplace hazards defined as unprotected heights and dangerous moving machinery. The claimant is capable of performing simple, routine repetitive tasks that are limited to level two (2) reasoning jobs. The claimant can only have occasional and superficial contact with the public and co-workers but can interact with supervisors. The claimant should avoid high stress work environments such as production paced work and have no changes in the workplace or work procedure without advance notice and advance demonstration of new procedures.

(AR 42).   In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p.  (AR 42).   The ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical and other evidence of record.  (AR 42-44). The ALJ, citing to the medical record, determined that the evidence did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments. (AR 44-46).

At step four, the ALJ determined that Plaintiff is unable to perform past relevant work under 20 C.F.R. §§ 404.1565 and 416.965.  (AR 47).  The ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy, namely as a laundry worker, supply worker, and cleaner.  (AR 47-48).  The ALJ concluded that Plaintiff had not been under a disability since the date the alleged onset date.  (AR 48-49).

### B.    Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be

3

referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the

claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work,

the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.    ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. In his motion, Plaintiff argues that the ALJ failed to properly evaluate the medical source opinion of psychologist Meghan Hamill. *See* (Doc. 12).

### A. Governing Law

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or

prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-

7

93.

**B. Parties' Contentions**

Plaintiff correctly notes that the ALJ incorporated "two of the moderate impairments found by" psychologist Meghan Hamill. (Doc. 12 at 10). Plaintiff argues that the ALJ did not incorporate limitations as to Dr. Hamill's finding of moderate impairment regarding maintaining regular attendance and completing a normal workday or workweek. Plaintiff provides that the "sole reason the ALJ rejects Dr. Hamill's opinion is because the ALJ described Dr. Hamill's use of the term 'moderate' as vague,'" which is insufficient under the regulations. *Id.* at 10-11. Plaintiff argues that the ALJ "had no difficulty in accepting Dr. Hamill's moderate limitations [] in both [Plaintiff's] ability to interact with coworkers and the public and in his ability to deal with the usual stressors encountered in the workplace," as well as incorporate said limitations into the RFC. *Id.* at 11.

Plaintiff asserts that, if the ALJ found the term "moderate" to be so vague or ambiguous, it triggered the ALJ's duty to develop the record by contacting Dr. Hamill to clarify any such ambiguity. *Id.* at 12-13. Plaintiff argues that the ALJ asked the VE during the hearing to "assume a hypothetical individual" who would have regular limitations on "completing a normal workday and workweek sufficient to miss two days of work a month," and that this demonstrates that the ALJ "understood what Dr. Hamill meant by the use of moderate." *Id.* at 13-14 (citing AR 89). Plaintiff asserts that the ALJ failed to rely upon reasoning supported by substantial evidence to reject the opinion of Dr. Hamill and failed to incorporate the resulting limitations in the RFC. *Id.* at 15-16.

Defendant argues that Dr. Hamill's opinions that Plaintiff had moderate limitations regarding regular attendance and completing a normal workday were themselves vague. (Doc. 14 at 6-7). Defendant asserts that the ALJ interpreted Dr. Hamill's opinions as ascribing moderate limitations in three of the four broad functional areas, consistent with the ALJ's own finding that Plaintiff had moderate limitations in three of the four areas, and provided an RFC that accounted for the limitations, including as to maintaining attendance and completing a normal workday. *Id.* at 7-8 (citing AR 40-41). Defendant cites to numerous prior cases for the proposition that "courts have held that a limitation to simple work accounted for various moderate limitations." *Id.* at 8-9.

8

Defendant separately attempts to distinguish cases that "have found that a limitation to simple or unskilled work does not account for moderate limitations in maintaining attendance and completing a normal workday/workweek." Defendant argues that such cases fail to explain why the Ninth Circuit's holding in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), does not apply to moderate limitations in maintaining attendance and completing a normal workday. *Id.* at 10.

Defendant argues that such limitations are not meaningfully distinguishable "because maintaining attendance and completing a normal workday/workweek are a subset of the broad category concentration, persistence or pace." Defendant asserts that the Social Security Listings state that the area of mental functioning titled "[c]oncentrate, persist, or maintain pace (paragraph B3)" includes "sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id* at 11 (citing 20 C.F.R. Part 404, Subpt. P. App. 1, Listing 12.00(E)). Defendant argues that a "RFC limitation that accounts for moderate limitations in the broad category should also account for moderate limitation in the sub-category." *Id.* at 12.

### C. Dr. Hamill's Opinion

Here, in discounting the opinions of Dr. Hamill, the ALJ reasoned as follows:

> This opinion is somewhat persuasive. The doctor supports her opinion with a personal examination of the claimant; however, her functional assessment is vague and fails to outline the claimant's actual functional abilities related to his mental impairment. The totality of the record supports the doctors findings regarding moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself but in doing so, exams show the claimant would be limited to performing work with only simple routine repetitive tasks limited to level two (2) reasoning jobs, should avoid high stress work environments such as production paced work, and he could have no changes in the workplace or work procedure without advance notice and advance demonstration of new procedures.
>
> Unsigned treatment notes in 2020 include work notes that indicate the claimant can only work part-time with supports. The opinion on an individual's ability to work is an issue reserved to the Commissioner (20 CFR 404.1527(d) and 416.927(d)). Accordingly, while reviewed in totality with the record, the undersigned does not provide articulation about the evidence that is inherently neither

valuable nor persuasive to the issue of whether the claimant is disabled.

(AR 46; citing 8F/9, 17, 26; 9F/4; 11F/5, 11-13; 12F/8).

Dr. Hamill conducted a mental evaluation of Plaintiff on September 25, 2020. Therein, she provides that Plaintiff's chief complaint is schizophrenia and that she reviewed his disability report form SSA-3368 and "Tri-City Medical reports." Dr. Hamill provides a history of illness, noting that Plaintiff stated he began hearing voices four to five years ago and was placed on medications but continues to have auditory hallucinations on a daily basis. Dr. Hamill records that Plaintiff describes his depression as "feeling sad all the time" but that he does not "feel like hurting [himself] anymore," and that he "used to be moody and irritable and the medications have improved that somewhat and his sleep is also improved"; he is receiving both counseling and psychiatric services. (AR 630). In the section titled "concentration/persistence/pace," Dr. Hamill noted that Plaintiff "appeared to have no significant difficulties attending during the evaluation [sic]." Dr. Hamill conducted a mental status examination, evaluating Plaintiff's general appearance, attitude and behavior, stream of mental activity and speech, content of thought, mood and affect, and intellectual functioning and sensorium. (AR 632-633).

After providing a diagnosis, discussion, and prognosis, Dr. Hamill provides a functional assessment wherein she notes that, among other things, Plaintiff "has a moderate impairment in his ability to maintain regular attendance and complete a normal workday or workweek without interruptions from a psychiatric condition." (AR 633-634).

**D. The Term "Moderate" Was Not Vague**

Contrary to Plaintiff's assertions, the ALJ does not explicitly connect use of the term "vague" as a descriptor in his decision to the term "moderate" as used in Dr. Hamill's opinion. Rather, the ALJ's description of "vague" appears to be directed to the functional assessment portion of her opinion as a whole, with the ALJ noting that Dr. Hamill "supports her opinion with a personal examination of the claimant; however, her functional assessment is vague and fails to outline the claimant's actual functional abilities related to his mental impairment." (AR 46). The ALJ does not assert that Dr. Hamill's description of Plaintiff's limitations as "moderate" is vague but, rather,

10

her functional assessment as a whole is vague, as it fails to outline specific functional abilities or restrictions arising from his mental impairments.

"The Ninth Circuit has held that an ALJ reasonably translated a medical opinion finding moderate limitations in pace and attention, concentration, and adaptation into an RFC for 'simple, routine, repetitive' work, but whether a restriction to such tasks adequately accounts for moderate attendance limitations is less clear." *Tamra W. v. O'Malley*, No. CV 22-9098-JPR, 2024 WL 283684, at *4–5 (C.D. Cal. Jan. 25, 2024) (citing *Stubbs-Danielson*, 539 F.3d at 1174). The undersigned acknowledges that, on this point, the case law in this circuit is split. *See id.*

"Some district courts have found that moderate attendance limitations are not accounted for in an RFC restriction to simple, routine tasks." *Id.* (citing cases). "In contrast, some district courts have found that moderate attendance limitations are adequately accounted for in an RFC restriction to simple, routine tasks." *Id.* (citing cases). Yet other district courts, in a third variety of cases, have found that where a medical opinion does not provide specific restrictions related to attendance, (for example, the number of days or percentage of time a claimant may miss), the ALJ's rejection of the medical opinion as to attendance limitations, without explanation and without any inclusion of limits in the RFC, is not improper. *Id.* (citing cases); *see Braceson W. v. Bisignano*, No. 5:24-cv-01449-SK, 2025 WL 3692142, at *2 (C.D. Cal. Aug. 26, 2025) ("Moreover, because Dr. Donohue provided no quantifiable attendance requirements in her opinion, the ALJ was not required to make up restrictions that are not actually articulated by any medical consultant.") (quotation omitted); *Alexander R. v. O'Malley*, No. CV 23-10167 RAO, 2024 WL 3556161, at *4 (C.D. Cal. July 26, 2024) ("Here, the RFC accounts for the mild to moderate limitation in Plaintiff's ability to comply with job rules such as safety and attendance despite its lack of specific attendance restrictions because Dr. Williamson did not render any specific attendance requirements.").

Here, Dr. Hamill did not identify any specific limitations regarding attendance. For instance, Dr. Hamill does not state the number of workdays Plaintiff might miss in a month, nor the percentage of work time Plaintiff may miss for the month, nor any number of days Plaintiff may be late or need to leave early. As Dr. Hamill did not specifically quantify her opinion as to Plaintiff's limitations regarding attendance, nor elaborate with any particularity regarding what her opinion of

11

"moderate" limitations entailed, Dr. Hamill presumably uses the term "moderate" as consistent with the Social Security Administration's definition. *See Tamra W.*, 2024 WL 283684, at \*5 ("Because Dr. Chehrazi did not quantify Plaintiff's 'moderate' limitation in attendance, the doctor presumably used the word consistent with the administration's definition.").

Plaintiff's citations to out-of-circuit authority for the proposition that "moderate" means loss of ability for one-third of an eight-hour workday, or a 30% impairment value, are unavailing. (Doc. 12 at 13).  A "moderate" limitation is defined by the Commissioner to mean "[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily." *Fergerson v. Berryhill*, No. 5:17-cv-00161-KES, 2017 WL 5054690, at \*3 (C.D. Cal. Nov. 1, 2017) (quoting Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-UC, Medical Source Statement of Ability to Do Work-Related Activities (Mental)); *see Rose M. E. v. Saul*, No. 5:20-cv-01199-AFM, 2021 WL 1612091, at \*3 (C.D. Cal. Apr. 26, 2021) (same) (citing, *inter alia*, *Fergerson*, 2017 WL 5054690, at \*3).

The ALJ, therefore, could have reasonably relied on the Commissioner's definition of the term "moderate" when evaluating Dr. Hamill's opinion, namely to mean that Plaintiff could still satisfactorily function in areas where "moderate" limitations were noted by Dr. Hamill. *See Alicia M. v. O'Malley*, No. 5:23-cv-01281-AJR, 2024 WL 3304519, at \*9 (C.D. Cal. Mar. 8, 2024) ("Consequently, the ALJ reasonably could have understood Dr. Donahue's opinion to mean that Plaintiff could still function satisfactorily in the areas where moderate limitations were assessed."); *Rose*, 2021 WL 1612091, at \*3 ("the ALJ could reasonably have understood Dr. D'Angelo's opinion as meaning that notwithstanding some limitations, Plaintiff 'can still function satisfactorily' in workplace attendance and in handling the stresses, changes and demands of gainful employment").

### E.  The ALJ's Lack of Explanation for Omittance Was Not Improper

Dr. Hamill's functional assessment includes the conclusion that Plaintiff "has no impairment in his ability to perform work activities on a consistent basis without special or additional instructions."  (AR 634).  And Dr. Hamill does not identify any restrictions regarding attendance elsewhere in her report. *See* (AR 630-634); *Larkin v. Saul*, 819 F. App'x 535, 537 (9th

Cir. 2020) (affirming the ALJ's rejection of workweek limitation in psychologist's opinion and noting that "[w]hile Dr. Comrie said Larkin had 'some limitation with keeping a regular workweek,' nowhere did he quantify what that limitation was—a surprising omission if he meant to say she would miss workdays. Dr. Comrie immediately followed his unspecific 'some limitation' statement with a connecting conjunction: 'but she retains the ability to follow through with routine tasks with reasonable CPP [concentration, persistence, and pace].'"). In *Larkin*, the examining psychologist stated "three different times, under three different headings, that Larkin would have problems with attendance, punctuality, and completing a regular workweek." *Larkin*, 819 F. App'x at 538 (Berzon, J., dissenting). Further supporting the conclusion in this action, Dr. Hamill does not mention problems with attendance, punctuality, or completing a regular workweek anywhere else in her opinion. *See* (AR 630-634). Dr. Hamill stated that Plaintiff has "moderate impairment in his ability to maintain regular attendance and complete a normal workday or workweek," but provides no concrete limitations therefor, and immediately above this finding states that Plaintiff "has no impairment in his ability to perform work activities on a consistent basis without special or additional instructions." (AR 634).

Dr. Hamill does not elaborate upon her findings regarding "moderate" attendance impairments elsewhere in her opinion, nor discuss how they relate to her finding that Plaintiff has no impairment in his ability to perform consistent work activities. In light of these facts, the undersigned finds most applicable herein the aforementioned third variety of cases, finding that where a medical opinion does not provide specific restrictions related to attendance, the ALJ's rejection of the medical opinion as to attendance limitations, without explanation and without any inclusion of limits in the RFC, is not improper. *See Tamra W.*, 2024 WL 283684, at *4–5 (citing cases). As Dr. Hamill did not assess or otherwise identify concrete limitations as to Plaintiff's "moderate" impairment regarding attendance, the ALJ was not obligated to explain his omittance of any such limitations from the RFC. *Cf. David S. v. Bisignano*, No. 1:24-cv-03193-ACE, 2026 WL 867764, at *9 (E.D. Wash. Mar. 30, 2026) (distinguishing *Larkin* and noting "[t]he record here is different. In this case, Dr. E and Dr. Comrie opined, without modification, unlike *Larkin*, that Plaintiff 'may miss days of work intermittently.'").

13

**F. The ALJ's Improper Reasoning for Rejecting Certain Records Was Not Material**

Though the ALJ was not obligated to explain his omittance of such limitations, the ALJ proffered some explanation regarding his rejection of certain records in relation to Dr. Hamill's opinion finding "moderate" impairments regarding attendance. *See* (AR 46).

Specifically, the ALJ states that "[u]nsigned treatment notes in 2020 include work notes that indicate the claimant can only work part-time with supports," and explains that he "does not provide articulation about the evidence that is inherently neither valuable nor persuasive to the issue of whether the claimant is disabled." (AR 46; citing 20 C.F.R. § 404.1527(d); *id.*, 416.927(d)). The first of the records cited by the ALJ in support of this second ground is dated May 20, 2020, recording a psychiatric visit concerning treatment of schizophrenia and cannabis use disorder. There are checkboxes in the record beside the question "Able to Work?" and the boxes for "With Support" and "Part-Time" are checked. (AR 609). After providing a treatment plan, there is a box checked next to "Client Signature Not Obtained (document reason why)," after which is written "Service Site prevents getting signature." There is, however, a signature by nurse practitioner Connery Lee, noted as electronically signed, dated May 20, 2020 at 1:35 p.m. (AR 610).

The next record cited by the ALJ is substantially similar. It is dated August 13, 2020, with the same diagnosis and with the same checkboxes checked next to the question "Able to Work?" and electronically signed by Connery Lee on August 13, 2020, at 2:43 p.m., with no signature by Plaintiff and with the same reason provided. (AR 617-618). The third record cited by the ALJ is substantially the same, is dated September 10, 2020, and electronically signed by Connery Lee on September 10, 2020, at 5:31 p.m. (AR 626-627).

Though the records cited above by the ALJ are not signed by Plaintiff, they are signed by nurse practitioner Connery Lee. The ALJ does not elaborate why a lack of signature by the Plaintiff, but an electronic signature by a nurse practitioner, is insufficient. Further, the Ninth Circuit has held that checkbox forms that do not stand alone but are supported by records should be "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). The cited records are not themselves generally checkbox forms but the limitations concerning Plaintiff's ability to work are expressed

14

in a checkbox format. However, there are narrative components of the cited records that detail plans, clinical findings, and appointment notes.

The ALJ does not discuss these records but states only that the "opinion on an individual's ability to work is an issue reserved to the Commissioner." (AR 46; citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). ‛"Not all statements by a medical source constitute a medical opinion." *Lee v. Colvin*, 80 F. Supp. 3d 1137, 1146 (D. Or. 2015). "That is, a medical source's conclusory statement that a claimant is 'disabled' or 'unable to work' does not bind the Commissioner to find the claimant is disabled. Nevertheless, statements by a medical source about a claimant's *likelihood of being able to sustain employment* are not conclusory as defined in 20 C.F.R. § 404.1527(d)(1)." *Id.* (citing *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012)) (emphasis added). The statements in the medical records cited by the ALJ are not clear conclusions holding that Plaintiff cannot work but, rather, indicate that Plaintiff may require limitations. As such, they assess Plaintiff's likelihood of being able to sustain fulltime employment and, contrary to the ALJ's determination, are not conclusory under 20 C.F.R. § 404.1527(d)(1).

In any event, the ALJ's improper rejection of said records does not undermine the other reasoning offered by the ALJ regarding Dr. Hamill's opinion; namely, the finding that the functional assessment as to attendance was inconsistent with the record. The ALJ found that the "totality of the record" supported Dr. Hamill's findings regarding "moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself." However, exams showed that Plaintiff "would be limited to performing work with only simple routine repetitive tasks limited to level two (2) reasoning jobs, should avoid high stress work environments such as production paced work, and he could have no changes in the workplace or work procedure without advance notice and advance demonstration of new procedures." (AR 46).

The ALJ noted that the "unsigned" records were "reviewed in totality with the record." (AR 46). Even if the Court were to find *arguendo* that the ALJ was required to explain why he rejected Dr. Hamill's opinion regarding "moderate" impairments as to attendance despite the lack of any specific restrictions therein, the ALJ's improper rejection of these treatment notes does not undermine his other reasoning, which sufficiently supports his rejection of limitations in Dr.

15

Hamill's opinion by finding them to be inconsistent with the record overall. *See Townsend v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08129-PCT-DWL, 2022 WL 3443678, at *6 (D. Ariz. Aug. 17, 2022) (citing cases and finding error harmless where the "ALJ identified another legally valid reason, supported by substantial evidence, for discrediting Dr. Saperstein's opinions").

Thus, the ALJ's rejection of portions of Dr. Hamill's opinion is supported by substantial evidence. Aside from the conclusory statement that Dr. Hamill's limitations, those of which that are supported by substantial evidence, must be incorporated into the RFC and failure to do so is legal error, Plaintiff does not provide any argument in his motion regarding whether the RFC is supported by substantial evidence. *See* (Doc. 12 at 15-16). Thus, the Court will not reach this issue.

## IV.    CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 12) is DENIED; and

2.    The Clerk of the Court is directed to enter judgment for Defendant and to then close this case.

IT IS SO ORDERED.

Dated:    **June 15, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

16